# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*CitiMortgage, Inc. v. Johnson*, 2013 IL App (2d) 120719

---

| | |
|---|---|
| Appellate Court Caption | CITIMORTGAGE, INC., Plaintiff-Appellee, v. QUENTIN B. JOHNSON and TONYA M. WHITAKER, Defendants-Appellants (The Lindent Estates Homeowners Association, Mortgage Electronic Registration Systems, Inc., Capital One Home Loans, LLC, Unknown Owners, and Nonrecord Claimants, Defendants). |
| District & No. | Second District<br>Docket No. 2-12-0719 |
| Filed | July 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order confirming the foreclosure sale of defendants' property was vacated pursuant to section 15-1508(d-5) of the Code of Civil Procedure based on plaintiff's violation of the Home Affordable Modification Program (HAMP) guidelines, and the cause was remanded to allow plaintiff to properly consider defendants' HAMP application, but the trial court did not abuse its discretion in refusing to impose sanctions under Supreme Court Rule 137 in the absence of any allegations that plaintiff violated any established authority. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CH-2986; the Hon. Leonard J. Wojtecki, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Ronald A. Almiron, of Raiz Almiron LLC, of Naperville, for appellants. |
|---|---|
| | Rosa M. Tumialan, of Dykema Gossett PLLC, of Chicago, and Melissa C. Brown, of Dykema Gossett PLLC, of Grand Rapids, Michigan, for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Hutchinson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, CitiMortgage, Inc., sought to foreclose on defendants Quentin B. Johnson and Tonya M. Whitaker's property, and the circuit court of Kane County granted summary judgment in its favor. Plaintiff proceeded to a sheriff's sale of the property, and, after the sale but before its confirmation, defendants objected to the confirmation, arguing, in pertinent part, that the sale should be vacated because plaintiff violated section 15-1508(d-5) of the Code of Civil Procedure (Code) (735 ILCS 5/15-1508(d-5) (West 2010)). The trial court denied defendants' objection and their subsequent motion for reconsideration, and it confirmed the sale of the property. Defendants appeal, arguing that the trial court erred in denying their objection to the confirmation of the sale and in denying their motion for sanctions against plaintiff. For the following reasons, we reverse the trial court's denial of defendants' objection to the confirmation of the sale and affirm its denial of defendants' motion for sanctions.

¶ 2                                    I. BACKGROUND

¶ 3        Plaintiff filed its complaint on August 20, 2009, seeking to foreclose a mortgage secured by real property at 3358 Moraine Drive in Aurora, Illinois (the Property). Defendants owned the Property. They filed *pro se* appearances and an answer to the complaint on November 20, 2009. Plaintiff filed its motion for summary judgment on February 4, 2010, and defendants responded on February 25, 2010. Defendants' *pro se* response was limited to one page. Defendants raised three contentions: that (1) plaintiff "failed to comply with the FHA rules regarding pre-foreclosure [*sic*] procedures," (2) the original mortgage holder engaged in potentially unfair lending practices, and (3) more information was necessary to determine the total amount owed. Plaintiff filed its reply on March 11, 2010, arguing that defendants' response was unsupported by facts or affidavit. The trial court agreed, entering an order on March 18, 2010, granting plaintiff's motion for summary judgment. The trial court also entered that day a judgment of foreclosure and sale in favor of plaintiff.

¶ 4    Defendants moved to reconsider the summary judgment ruling on June 11, 2010, arguing that plaintiff had failed to supply the court with the original signed loan documents and that plaintiff was not legally authorized to foreclose on defendants' mortgage, because only the holder of the note is so authorized. Defendants, still proceeding *pro se*, also filed an emergency motion to vacate judgment on June 16, 2010, reiterating plaintiff's lack of legal standing to bring this suit. On July 14, 2010, defendants filed a hardship affidavit seeking a loan modification under the Making Home Affordable Program (MHA) (see 12 U.S.C. § 5219 (Supp. III 2010)) through the Home Affordable Modification Program (HAMP) (*Handbook for Servicers of Non-GSE Mortgages* (Dec. 13, 2012), *available at* http://www.makinghomeaffordable.gov/for-partners/understanding-guidelines/ Documents/mhahandbook_41.pdf (last visited June 21, 2013) (hereinafter *HAMP Guidelines*)). On August 2, 2010, plaintiff responded to defendants' motion to vacate, asserting that its attachment of a copy of the mortgage and the note to its complaint established its standing. In defendants' reply, they for the first time argued that plaintiff failed to follow homeowner protection guidelines under section 15-1502.5 of the Code (735 ILCS 5/15-1502.5 (West 2010)). The trial court denied defendants' motion to vacate on September 2, 2010.

¶ 5    The Property was sold at a sheriff's sale on September 23, 2010. Defendants objected in writing to the confirmation of the sale, reiterating that plaintiff had violated section 15-1502.5 of the Code and attaching their hardship affidavit. On October 4, 2010, the court heard plaintiff's motion to confirm the sale. Defendants orally objected, and the court denied their oral objection. However, the court did not confirm the sale. Instead, the court directed defendants to file a written motion opposing confirmation under section 15-1508(d-5) of the Code (735 ILCS 5/15-1508(d-5) (West 2010)), evidencing any application for a loan modification under the MHA/HAMP and specifying any "material violations" of that program's requirements. Defendants filed their motion on October 15, 2010.

¶ 6    In their motion to deny confirmation of the sheriff's sale, defendants alleged violations of section 15-1502.5 of the Code (735 ILCS 5/15-1502.5 (West 2010)), including failure to postpone the sheriff's sale after defendants submitted a HAMP application on July 14, 2010, and lack of communication from plaintiff regarding their application, and attached their HAMP application. Plaintiff responded by pointing out that under section 15-1508(d-5), defendants were required to show that they submitted a HAMP application *and* that plaintiff materially violated the HAMP's requirements for proceeding to a judicial sale. However, plaintiff argued, defendants had shown only the submission of the application, not any material violations of the HAMP. Plaintiff had denied defendants' HAMP application on September 17, 2010, on the basis of a negative net present value (NPV) of a loan modification. Plaintiff attached a letter dated September 22, 2010, from plaintiff to defendants denying their application. Defendants' reply argued that plaintiff violated federal guidelines under the MHA, including by providing inadequate notice before the sheriff's sale.

¶ 7    On December 28, 2010, the trial court granted defendants' motion to deny confirmation of the sale and set aside the sale. However, the court further ordered that the redemption period had passed and the previously entered judgment remained in full force and effect, so

plaintiff could proceed to sale with proper issuance of new notice. That is what plaintiff did, issuing new notice for a sheriff's sale scheduled for July 28, 2011, although later canceling that sale and rescheduling it for November 17, 2011.

¶ 8 Meanwhile, on July 19, 2011, defendants filed a voluntary petition for chapter 7 bankruptcy (11 U.S.C. § 701 *et seq.* (2006)) in the Northern District of Illinois.[1] Defendants also filed a second HAMP application on October 21, 2011, requesting a loan modification. On the second HAMP application, defendants indicated that their bankruptcy had been discharged. Defendants faxed a copy of their application to plaintiff on November 3.

¶ 9 The rescheduled sheriff's sale, for which plaintiff sent defendants notice via mail on October 24, 2011, took place on November 17, 2011. On November 28, plaintiff moved to confirm the sale and defendants moved to deny confirmation. In their motion, defendants claimed that plaintiff violated section 15-1508(d-5) of the Code (735 ILCS 5/15-1508(d-5) (West 2010)) by materially violating the HAMP guidelines by failing to process the application as required, failing to postpone the sale, and failing to provide proper notice.[2] Plaintiff filed a response on January 31, 2012, arguing that: (1) it did not violate section 5-1508(d-5), because defendants did not identify a sufficient change in circumstance, as necessary for a successive HAMP application, and (2) it had unrefuted evidence that it served proper notice on defendants. Plaintiff further argued that, even if there had been a sufficient change in circumstance, defendants still had not identified a *material* violation of the HAMP guidelines. Defendants' reply did not identify a change in circumstance. The reply mostly restated arguments made in the initial motion and in prior motions in the course of the litigation.

¶ 10 On March 29, 2012, the trial court denied defendants' motion to deny confirmation of the sale. The order stated that notice for the sale was proper and that no issues regarding violations of the HAMP guidelines precluded confirmation of the sale. The court granted plaintiff's motion to confirm, approving the sale and distribution of the Property.

¶ 11 On April 17, 2012, defendants, now represented by counsel, filed a motion to reconsider the March 29 order. Defendants argued that plaintiff violated section 15-1508(d-5) of the Code when it let the sheriff's sale proceed despite defendants' October 21, 2011, HAMP application, because (1) defendants' discharge from bankruptcy on October 27, 2011, was a sufficient change in circumstance because the elimination of debt would have changed the outcome of the HAMP application, and (2) because defendants submitted a timely application, it was not yet the province of the court to determine the merits of the HAMP application, but only to stop the November 17 sale. Defendants argued that plaintiff did not assert that it did not timely receive their HAMP application but rather that plaintiff chose to ignore the application. Defendants argued that plaintiff's reason for denying their

---

[1]Defendants do not attach a copy of their bankruptcy petition or cite to the record to support their filing. However, plaintiff concedes the filing, and we proceed with this disposition assuming that defendants did file for bankruptcy as related in their brief.

[2]Defendants claim that they never received notice of the sheriff's sale and found out that the sale had occurred only from a realtor who visited the home on November 22, 2011.

application–that the loan had been paid off as of November 21, 2011–was tantamount to telling defendants "too bad," that plaintiff would not "waste time" considering their application when it had already sold their property. Defendants further argued for sanctions against plaintiff under Illinois Supreme Court Rule 137 (eff. Jan. 4, 2013) because plaintiff knew that it should not have proceeded with the sale or sought confirmation of the sale when in receipt of defendants' application, yet did so anyway, requiring defendants to hire attorneys and causing them financial hardship. Defendants also filed a motion to stay disposition of the Property.

¶ 12    Plaintiff argued in its response that a *second* HAMP application in and of itself did not require a delay of the sheriff's sale and that a discharge from bankruptcy was not a sufficient change in circumstance for a successive application. Furthermore, it argued that whether defendants received certain documents was immaterial because the March 29 order was based on a finding of no material violation of HAMP guidelines, and nonreceipt of documents would not change that analysis. Finally, it denied that sanctions were warranted. Defendants reiterated their original arguments in their reply, arguing that plaintiff's assertion that there was no sufficient change in circumstance was speculative and that plaintiff failed to follow HAMP guidelines by not properly considering their second HAMP application.

¶ 13    On June 14, 2012, the trial court held a hearing regarding defendants' motions to reconsider the March 29 order, impose sanctions, and stay disposition of the Property. It denied all motions.

¶ 14    Defendants timely appealed.

¶ 15                             II. ANALYSIS
¶ 16                          A. Standard of Review
¶ 17    Defendants contend that the proper standard of review is *de novo* because their motion to reconsider challenged the trial court's application of law in confirming the sale of the Property. See *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 259 (2008) ("[W]here a motion to reconsider raises a question of whether the trial court erred in its previous application of existing law, we review *de novo* the trial court's determinations of legal issues."). However, plaintiff disagrees, instead arguing for an abuse-of-discretion standard, citing *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008) ("A court's decision to confirm or reject a judicial sale will not be disturbed absent an abuse of *** discretion.").

¶ 18    Here, defendants moved to reconsider the trial court's confirmation of the sale. Defendants argue on appeal that the trial court should not have confirmed the sale and should have vacated the sale. We agree with plaintiff that, under *Lewis*, the standard of review for whether the trial court correctly confirmed the sale is the abuse-of-discretion standard. However, we note that a trial court abuses its discretion when its ruling rests on an error of law. *Peeples v. Village of Johnsburg*, 403 Ill. App. 3d 333, 339 (2010).

¶ 19    As to the denial of Rule 137 sanctions, defendants do not cite a standard of review, but as plaintiff correctly cites, the standard of review is also for an abuse of discretion. *Nelson v. Chicago Park District*, 408 Ill. App. 3d 53, 67 (2011); *Medical Alliances, LLC v. Health*

*Care Service Corp.*, 371 Ill. App. 3d 755, 756 (2007).

¶ 20        B. Order Approving and Confirming Sale and Distribution of the Property

¶ 21        Defendants' appeal centers around the trial court's March 29, 2012, order approving and confirming the sale and distribution of the Property. Defendants advance two primary arguments for why the trial court erred by entering the order and for why the sale should be set aside: (1) the trial court misapprehended the *facts* regarding defendants' HAMP application, and (2) the court misapplied the *law* by confirming the sale despite material violations of Illinois law (735 ILCS 5/15-1508(d-5) (West 2010)) and the HAMP guidelines.

¶ 22        Defendants argue that, had the trial court considered the following facts, the March 29 order would not have been entered. Their bankruptcy and subsequent discharge was a change in circumstances for purposes of the HAMP guidelines. Plaintiff admitted that defendants sought a loan modification under the HAMP on October 21, 2011, and that it even had a homeowner support specialist send defendants a letter offering assistance. Plaintiff corresponded with defendants on November 3, 2011, requesting documents in support of the HAMP application, which defendants faxed plaintiff that same day. By receiving defendants' timely HAMP application, plaintiff had actual notice of defendants' application on November 3. Yet, despite receipt of defendants' application, plaintiff proceeded with the sheriff's sale and sought confirmation of the sale. The sale should not have proceeded for at least two reasons: improper notice to defendants and a material violation of HAMP guideline 3.3. See *HAMP Guidelines*, *supra*, ch. II, § 3.3.

¶ 23        As to notice, defendants argue that notice was improper under section 15-1507 of the Code (735 ILCS 5/15-1507 (West 2010)) because defendants did not receive notice before the sale, the notice proffered by plaintiff did not have a file-stamp, and the notice in the trial court file was not file-stamped until November 28, 2011, which was 11 days after the sale. As to the HAMP violations, HAMP guideline 3.3 requires that "[w]hen a borrower submits a request for HAMP consideration after a foreclosure sale date has been scheduled and the request is received no later than midnight of the seventh business day prior to the foreclosure sale date (Deadline), the servicer must suspend the sale as necessary to evaluate the borrower for HAMP." *HAMP Guidelines*, *supra*, ch. II, § 3.3. Here, plaintiff had at least 14 days' notice of defendants' HAMP application prior to the date scheduled for the sale but did not stop the sale. The issue, therefore, is plaintiff's failure to suspend the sale upon receipt of defendants' HAMP application, not whether defendants' discharge from bankruptcy was a sufficient change in circumstance (although defendants maintain that it was).

¶ 24        Turning from plaintiff's conduct to the trial court's application of law, defendants argue that the court misapplied section 15-1508(d-5) (735 ILCS 5/15-1508(d-5) (West 2010)) and the HAMP guidelines when it confirmed the sheriff's sale. Section 15-1508(d-5) reads:

"The court that entered the judgment shall set aside a sale held pursuant to Section 15-1507, upon motion of the mortgagor at any time prior to the confirmation of the sale, if the mortgagor proves by a preponderance of the evidence that (i) the mortgagor has applied for assistance under the Making Home Affordable Program established by the United States Department of the Treasury pursuant to the Emergency Economic

Stabilization Act of 2008, as amended by the American Recovery and Reinvestment Act of 2009, and (ii) the mortgaged real estate was sold *in material violation of the program's requirements for proceeding to a judicial sale*." (Emphasis added.) 735 ILCS 5/15-1508(d-5) (West 2010).

Defendants argue that plaintiff materially violated HAMP guideline 3.3 because it was aware of defendants' timely HAMP application yet did not act on it by stalling the sheriff's sale. Moreover, HAMP guideline 1.2 provides that a loan that was initially rejected for, *inter alia*, a negative NPV "may be reconsidered for HAMP at a future time if the borrower experiences a change in circumstance." *HAMP Guidelines*, *supra*, ch. II, § 1.2. Defendants contend that their discharge from bankruptcy would have led to a change in their credit scores, thus affecting an NPV analysis–the type of analysis that led to the rejection of their first HAMP application. This was a change in circumstance that should have allowed for HAMP reconsideration, and all that was necessary to halt the sale was the reconsideration, not the outcome of the reconsideration. Therefore, because defendants made a timely application for reconsideration after experiencing a change in circumstance, plaintiff violated HAMP guideline 3.3 by proceeding with the sale despite actual notice of the timely application, and the trial court should have set aside the sale pursuant to section 15-1508(d-5) (735 ILCS 5/15-1508(d-5) (West 2010)).

¶ 25        Plaintiff responds to defendants' arguments as follows. As a threshold matter, defendants have the burden of developing a sufficient record for review. However, with regard to whether defendants' second HAMP application represented a change in circumstance such that reconsideration was required under HAMP guideline 1.2, there is little evidence–defendants present only their applications from July 14, 2010, and November 3, 2011, and, of the two applications, only the November 2011 application contained defendants' financial information. Therefore, defendants' argument that plaintiff materially violated HAMP guidelines and thus the trial court should have set aside the sale pursuant to section 15-1508(d-5) (735 ILCS 5/15-1508(d-5) (West 2010)) should be deemed forfeited under Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013), because there is an insufficient record to support the argument. We find, however, that there is a sufficient record to address the issues presented on appeal, and we therefore address the substance of defendants' arguments.

¶ 26        Plaintiff next argues that defendants' arguments fail on their merits. Although plaintiff concedes that defendants' second HAMP application *qualified* for reconsideration, *qualifying* is not synonymous with experiencing a change in circumstance that *requires* reconsideration. Plaintiff focuses on the lack of evidence–specifically defendants' failure to demonstrate a change in their financial circumstances–to establish a change in circumstance that would have affected their NPV calculation, which was the basis for denial of their first HAMP application. A postbankruptcy status, standing alone, is not a change in circumstance under the HAMP guidelines. Although successive HAMP applications are possible and anticipated under the guidelines, the mere filing of a successive application does not trigger MHA protections; a change in circumstance is a necessary condition for reconsideration, and the change in circumstance must relate to the reason the original application was denied, here, the negative NPV calculation. Without financial data from both the first and second

applications, defendants have not demonstrated a change in their financial circumstances that could have affected their NPV calculation. Moreover, defendants cite no support in the record or authority for the proposition that a bankruptcy discharge constitutes a change in circumstance necessary for reconsideration under the HAMP guidelines.

¶ 27    Moreover, plaintiff argues, defendants' arguments lead to an absurd result–that is, if all a defendants has to do to delay proceedings is file a HAMP application without an accompanying change in circumstance, then a defendant could unilaterally delay a sheriff's sale into perpetuity. Plaintiff argues that the purpose of the HAMP guidelines and the MHA is to provide assistance to homeowners to reduce monthly payments so that they may keep their homes, not to let homeowners recycle denied applications to stave off inevitable sales.

¶ 28    Plaintiff also argues that defendants' contention that they did not receive proper notice of the sheriff's sale fails. However, plaintiff offers little in the way of support for this argument, other than asserting that "defendants offer nothing, save a passing reference in their brief, to compel a different conclusion" and that, since defendants "knew to submit" their second HAMP application on November 3, 2011–two weeks before the date set for the sheriff's sale–they must have been aware of the sale, implying that they had notice.

¶ 29    Defendants reply by arguing that there is no difference between qualifying for consideration and reconsideration of a HAMP application. What is important, they argue, is that they submitted a timely HAMP application following a discharge from bankruptcy, more than seven days before the scheduled sheriff's sale. Following a developing common theme here–one that we find cuts against both parties, at least at times–defendants contend that plaintiff lacks supporting authority for its positions.

¶ 30    Defendants also cite HAMP guideline 1.2, which says that a borrower who has received a chapter 7 bankruptcy discharge in a case involving a first lien mortgage and who did not reaffirm the mortgage debt under applicable law is eligible for HAMP. *HAMP Guidelines*, *supra*, ch. II, § 1.2. Defendants argue that this guideline provides that a bankruptcy discharge is, in fact, a change in circumstance that allowed them to submit a successive HAMP application. Furthermore, the HAMP guidelines do not require a *material* change in circumstance; materiality, according to defendants, is relevant only to plaintiff's violation of the HAMP guidelines, *i.e.*, the requirement under section 15-1508(d-5) of the Code (735 ILCS 5/15-1508(d-5) (West 2010)) that the sale proceeded in material violation of the MHA, and thus the HAMP guidelines. Moreover, defendants deny that consideration of their second HAMP application–following a discharge from bankruptcy that would affect their credit score, thereby possibly altering an NPV analysis–would lead to an absurd result of endless, successive filings to delay a sheriff's sale. Rather, they merely submitted a second application after circumstances changed in such a way that they might qualify under the MHA to modify and pay down their loan.

¶ 31    We begin our analysis by recognizing that any relief here stemming from violations of HAMP guidelines must derive from section 15-1508(d-5).[3] For the following reasons, we

---

[3]Defendants do not explicitly argue for relief stemming from HAMP violations under another section of Illinois law, although they do argue that notice was improper under section 15-

find that the trial court should have granted defendants' motion to deny confirmation of the sale under section 15-1508(d-5) (735 ILCS 5/15-1508(d-5) (West 2010)).

¶ 32    We agree with defendants that the initial, operative question is whether they qualified for reconsideration and disagree with plaintiff that qualifying for reconsideration is somehow a wholly separate inquiry from experiencing a change in circumstance. Per HAMP guideline 1.2, a mortgage loan may be reconsidered under HAMP if, after meeting basic criteria but being disqualified due to a negative NPV–as was defendants' first application in July 2010–the borrower experiences a change in circumstance. *HAMP Guidelines*, *supra*, ch. II, § 1.2; see also *Home Affordable Modification Program–Borrower Outreach and Communication Supplemental Directive* 10-02, at 9 (Mar. 24, 2010), *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer /sd1002.pdf (last visited June 21, 2013). However, guideline 1.2 does not end there. It continues, "Servicers must have an internal written policy which defines what the servicer considers a change in circumstance and outlines when a borrower will be reevaluated for HAMP." *HAMP Guidelines*, *supra*, ch. II, § 1.2. Furthermore, although a servicer's policy may limit the number of reconsiderations, the guidelines require the servicer to allow at least one reconsideration, and this was defendants' first such request for reconsideration. *HAMP Guidelines*, *supra*, ch. II, § 1.2. Conspicuously missing from plaintiff's brief is any reference to its own internal policy that would define or limit what it considers a change in circumstance. Given that plaintiff has not ruled out a bankruptcy discharge as a change in circumstance per its policy, and given that a borrower's credit score is a factor input in an NPV calculation (see *HAMP Guidelines*, *supra*, ch. II, §§ 2.2, 7.6.1, 7.8), it stands to reason that a bankruptcy discharge could be a change in a borrower's circumstance that would affect the outcome of the very analysis that was the basis for their first application's denial: a negative NPV.[4] Whether a discharge from bankruptcy would lead to a positive NPV, or to even a more negative NPV, we do not know. But that is the point. The purpose of HAMP, and the purpose of a reconsideration after a change in circumstance, is to evaluate the status of borrowers to determine if they qualify under the MHA for loan assistance or modification and thus to prevent avoidable foreclosures after the collapse of the housing market in 2008. See *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 554 (7th Cir. 2012). Bankruptcy affects a credit score, which in turn affects an NPV analysis, which in turn affects whether a borrower will receive assistance under HAMP. We find that, absent an internal policy to the contrary, a borrower's discharge from chapter 7 bankruptcy is a change in circumstance that

---

1508(b). We address notice after addressing the alleged HAMP violations.

    [4]Defendants argue that HAMP guideline 1.2 supports that a discharge from chapter 7 bankruptcy is a change in circumstance. The portion of the guideline they cite states that "[b]orrowers who have received a Chapter 7 bankruptcy discharge in a case involving a first lien mortgage *** are eligible for HAMP." *HAMP Guidelines*, *supra*, ch. II, § 1.2. However, this provision merely affirms that a borrower discharged from bankruptcy is eligible for HAMP in general but does not speak to continued eligibility for a successive application due to a change in circumstance.

-9-

can trigger continued eligibility for a successive HAMP application under HAMP guideline 1.2. *Cf. Santelises v. Bank of America, N.A.*, No. 12-11164-NMG, 2012 WL 6045986 (D. Mass. Oct. 22, 2012) (defendants failed to allege a change in circumstance, which the court described as an increase in income or other assets).

¶ 33    Finding that the bankruptcy discharge qualified defendants to apply for HAMP reconsideration only gets their proverbial feet in the door. In order to set a sale aside, section 15-1508(d-5) requires that a defendant file a motion before confirmation of the sale and prove, by a preponderance of the evidence, that the defendant applied for assistance under the MHA and that the sale took place in *material violation* of the MHA's requirements, *i.e.*, the HAMP guidelines, for proceeding to a judicial sale. 735 ILCS 5/15-1508(d-5) (West 2010). Defendants correctly contend that this is where materiality matters, that is, whether plaintiff materially violated HAMP and not whether the change in circumstance was a material one.

¶ 34    Defendants focus on HAMP guideline 3.3, which says that a servicer *must* suspend a sale as necessary to evaluate the borrower for HAMP if a timely application is submitted. Here, defendants' submission two weeks before the sale was timely. They were eligible for reconsideration because of their change in circumstance, and plaintiff did not complete the evaluation of their application until after the sale, indicating that suspension of the sale was necessary to allow for sufficient time to complete the evaluation. Given that the purpose of the HAMP is to assist borrowers in maintaining their properties, proceeding to sale in violation of a guideline that mandates that a servicer "must suspend the sale" is clearly the type of material violation contemplated in section 15-1508(d-5).

¶ 35    There are, however, four circumstances where a servicer such as plaintiff is not required to suspend a foreclosure sale; none applies here. *HAMP Guidelines*, *supra*, ch. II, § 3.3. The first is when a HAMP application is untimely, that is, received after the deadline of seven business days prior to the scheduled sale. We have already found that defendants' application was timely. The second regards the situation where a borrower has received a permanent loan modification, which is inapplicable here because defendants never received any sort of loan modification. The third involves a trial period plan (TPP), which again does not apply because defendants never received a TPP. Finally, a servicer does not have to suspend a sale if it finds a borrower ineligible under HAMP. Although that is essentially what plaintiff argues on appeal–that defendants did not qualify to file a successive HAMP application–it did not deny defendants' second application on this basis. Instead, it proceeded to sale without resolving the HAMP application one way or another, and, only after the sale, it informed defendants that their application was denied because the loan had been paid off (via, impliedly, the sale). Moreover, we have already found that defendants were eligible for a successive HAMP application due to their change in circumstance, and therefore plaintiff's argument fails regardless.

¶ 36    Although the trial court had discretion to decide whether to confirm the sale, we review the construction of statutes *de novo*. See *Household Bank, FSB*, 229 Ill. 2d at 178. We find that a "material violation" under section 15-1508(d-5) occurred where plaintiff proceeded to sale in violation of HAMP guideline 3.3, which required suspension of the sale upon defendants' successive HAMP application. Had the trial court construed the law this way,

it surely would have sustained defendants' objection to confirmation of the sale. Therefore, the trial court abused its discretion when it confirmed the sale of the Property. To hold otherwise would be to effectively ignore our legislature's promulgation of section 15-1508(d-5).

¶ 37        We also disagree with plaintiff that our holding will lead to an absurd result. Successive applications cannot be made *ad infinitum* under our holding. In fact, unless a defendant can declare and receive a discharge from bankruptcy multiple times–and all before a scheduled sale–then a defendant cannot use our holding to perpetually suspend a sale. A change in circumstance is necessary to qualify a defendant for a successive application, and the HAMP guidelines require that a servicer allow at least one reconsideration based on a change in circumstance. The proper course is for a servicer such as plaintiff to define in its internal policy what qualifies as a change in circumstance, and, if it receives a successive application that does not qualify due to a lack of change in circumstance, to timely deny the application based on that fact.

¶ 38        As to defendants' argument of improper notice, the trial court did not abuse its discretion in finding that notice was proper under section 15-1508(b-5). The notice filed with the court, albeit not file-stamped until after the sale, attested to the fact that plaintiff mailed notice of the November 17, 2011, sale on October 24, 2011. Defendants offer nothing more than their own protestations that they did not receive the mail. However, this argument is moot because confirmation of the sale should have been denied based on a violation of section 15-1508(d-5) for a material violation of the HAMP guidelines.

¶ 39                                C. Rule 137 Sanctions

¶ 40        Defendants argue that plaintiff's failure to suspend the sale per HAMP guideline 3.3 is alone reason to sanction plaintiff. Defendants also try to paint a picture of blatant disregard for rules and procedures as plaintiff rushed to complete the sale of the Property. However, defendants provide no legal standard by which we can assess whether the trial court abused its discretion and should have imposed sanctions.

¶ 41        Illinois Supreme Court Rule 137 (eff. Jan. 4, 2013) requires that an attorney certify that a pleading, motion, or other document is "to the best of his knowledge, information, and belief formed after reasonable inquiry" and "is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." "The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 285-86 (2001). Rule 137 sanctions are punitive, so the rule should be strictly construed. *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1045 (2004).

¶ 42        The trial court here denied the motion for sanctions, and we will not reverse absent an abuse of discretion. *E.g.*, *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998); *Edwards v. City of Henry*, 385 Ill. App. 3d 1026, 1034 (2008). There is no contention that plaintiff's actions were not grounded in fact. Defendants argue that throughout the course of

the litigation, plaintiff "treated Defendants egregiously." They also contend that proceeding to sale, in violation of HAMP guideline 3.3, was an unwarranted, sanctionable action. However, defendants' characterization of plaintiff's conduct is overly generalized. The only specific conduct that defendants focus our attention on is plaintiff's proceeding with the November sale of the Property despite its receipt of defendants' second HAMP application. Plaintiff's conduct over the course of the litigation can reasonably be viewed as that of a servicer, acting in its best interests, merely trying to expedite the sale of the Property after receiving a judgment in its favor. Furthermore, the law in this area was unclear; neither party was able to cite authority that a bankruptcy discharge was a change in circumstance that qualified defendants for a successive HAMP application. Absent some allegation that plaintiff proceeded contrary to established authority in this case, we cannot find plaintiff's actions sanctionable under Rule 137.

¶ 43                                 III. CONCLUSION

¶ 44        For the reasons stated, we reverse the Kane County circuit court's order granting confirmation of the sale of the Property, vacate the sale, and remand the cause so that plaintiff can properly consider defendants' HAMP application. We affirm the Kane County circuit court's order denying Rule 137 sanctions.

¶ 45        Affirmed in part and reversed in part; cause remanded.