# Illinois Official Reports

## Appellate Court

*CitiMortgage, Inc. v. Bermudez*, 2014 IL App (1st) 122824

| | |
|---|---|
| Appellate Court Caption | CITIMORTGAGE, INC., Successor by Merger to ABN MRO Mortgage Group, Inc., Plaintiff-Appellee, v. JUANITA BERMUDEZ and HECTOR ACEVEDO, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2824 |
| Rule 23 Order filed | December 31, 2013 |
| Rule 23 Order withdrawn | January 22, 2014 |
| Opinion filed | January 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In mortgage foreclosure proceedings where defendants sought to set aside the sale of their home and the trial court's order confirming the sale based on their claim that they had sought assistance through the Home Affordable Modification Program, the trial court did not abuse its discretion in denying defendants' motion and confirming the sale, since defendants failed to prove by a preponderance of the evidence that they did apply for assistance under the program, despite the efforts that they made. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-37001; the Hon. Darryl B. Simko, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Al Hofeld, Jr., and Jeanne M. Charles, both of Law Offices of Al Hofeld, Jr., of Chicago, for appellants.

Michael Gilman, of Dykema Gossett PLLC, of Chicago, for appellee.

Panel

JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Hall and Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from a mortgage foreclosure action involving a property owned by defendants Juanita Bermudez (Bermudez) and Hector Acevedo (Acevedo) (collectively defendants).[1] Defendants sought to save their residence from foreclosure by obtaining assistance through the Home Affordable Modification Program (HAMP) a component of the Making Home Affordable Program (MHAP).[2] It was only after a judgment of foreclosure and sale was entered and the property was sold at a judicial sale that defendants appeared in the lawsuit.

¶ 2    Defendants now appeal from the circuit court of Cook County's denial of their motion to set aside the judicial sale and the order confirming the judicial sale pursuant to section 15-1508(d-5) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1508(d-5) (West 2012)). Defendants also appeal from the circuit court's denial of leave to file a late reply in support of their motion to set aside the sale, the denial of leave to file a

---

[1]Hector Acevedo is the grandson of Juanita Bermudez.

[2]HAMP is a program jointly created by the Department of Treasury, the Federal Housing Finance Agency, the Federal National Mortgage Association (Fannie Mae), and the Federal Home Loan Mortgage Corporation (Freddie Mac), which offers financial incentives to mortgage lenders to modify the home loans of borrowers in danger of foreclosure. The program was created under the Emergency Economic Stabilization Act of 2008 (EESA), and signed into law on October 3, 2008. 12 U.S.C. § 5201 (2012). EESA implements programs paid for by the Troubled Asset Relief Program (12 U.S.C. §§ 5211, 5225 (2006 & Supp. II 2009)) and allocated $700 billion to the United States Treasury to restore financial stability. On February 18, 2009, the Treasury created the Making Home Affordable Program, a comprehensive plan to prevent avoidable foreclosures after the collapse of the housing market in 2008. See *CitiMortgage Inc. v. Johnson*, 2013 IL App (2d) 120719, ¶ 32. Participation in HAMP is mandatory for government sponsored entities (GSEs) such as Fannie Mae and Freddie Mac and voluntary for non-GSEs. Fannie Mae, as financial agent, and Freddie Mac, as compliance agent, contract with loan servicers to ensure compliance with HAMP Guidelines.

late response to a motion to strike an affidavit, and an order denying them leave to obtain limited discovery concerning HAMP requirements for Freddie Mac mortgages.

¶ 3 For the reasons that follow, we affirm the decision of the circuit court.

¶ 4 BACKGROUND

¶ 5 On October 2, 2009, CitiMortgage filed a mortgage foreclosure complaint alleging defendants were in default for failing to tender the required mortgage payments on property located at 5140 W. George, Chicago (the property), as of June 1, 2009. Defendants did not file an answer and did not immediately file an appearance.[3]

¶ 6 On October 7, 2009, defendants retained attorney Matthew Wildermuth (Wildermuth) to assist them in obtaining a permanent loan modification.[4] On December 14, 2009, while the foreclosure litigation was pending, defendants received correspondence from CitiMortgage offering them the opportunity to participate in a stated income "Trial Period Plan" (TPP) under HAMP based upon information provided by defendants over the telephone. A TPP is a "three-month forbearance plan time period during which the Borrower makes payments that are an estimate of the anticipated modified payment amount, as one of the preconditions to modification." HAMP Bulletin 2009-6 § C65.1(a) (Mar. 11, 2009). HAMP guidelines permit a servicer to issue a TPP based upon information either provided verbally or through required documentation.[5] The letter indicated defendants could qualify for a TPP if they: (1) formally accepted CitiMortgage's offer; (2) executed a hardship affidavit; (3) provided specific documentation as required in an attached checklist[6]; and (4) tendered three monthly payments in the amount of $1,120.63. Defendants were required to provide all forms, documentation, and the first payment to CitiMortgage by January 1, 2010. Under HAMP guidelines a servicer, such as CitiMortgage, could not issue a HAMP loan modification until it verified the borrower's income and eligibility for a HAMP loan modification. HAMP

---

[3]Defendants appeared in the matter in April 2011. Defendants never filed an answer to the mortgage foreclosure complaint.

[4]Counsel did not file an appearance in the foreclosure matter.

[5]The HAMP Guide allowed servicers, such as CitiMortgage, to either issue a TPP based upon information borrowers verbally furnish (stated income TPP), or to require borrowers to submit all required documentation necessary to verify eligibility and income before issuing a verified income TPP. HAMP Bulletin 2009-10 § C65.5 (Apr. 21, 2009). A borrower must submit the same amount and types of documentation regardless of whether the lender chooses to offer a stated income TPP or a verified income TPP. *Id.* HAMP Bulletin 2010-3, issued on February 4, 2010, announced the elimination of stated income TPPs for the TPPs with effective dates on or after June 1, 2010. Instead, a borrower must now prove up front he or she qualifies for a TPP before he or she is offered one.

[6]The documents required are discussed at length later in this section.

Bulletin 2009-10 § C65.5 (Apr. 21, 2009). If all conditions were met, defendants would be offered a permanent loan modification under HAMP as early as April 2010.

¶ 7 In response to the letter, defendants submitted their first TPP payment on January 9, 2010. On January 22, 2010, Wildermuth submitted the executed TPP agreement and defendants' financial documentation to CitiMortgage on defendants' behalf. Defendants' hardship affidavit, however, was missing the signature page. Defendants also submitted a joint Internal Revenue Service (IRS) tax form, even though they are not joint filers. The documents required to verify defendants' income were not completely executed, as Acevedo failed to complete a suitable tax transcript release form,[7] which prevented the IRS from releasing tax information to CitiMortgage.

¶ 8 Meanwhile, also on January 22, 2010, the circuit court entered an order of default and judgment of foreclosure and sale pursuant to section 15-1506 of the Foreclosure Law (735 ILCS 5/15-1506 (West 2010)) against the subject property and all defendants. Notwithstanding the order of default and judgment of foreclosure, CitiMortgage continued to communicate with defendants regarding the TPP and voluntarily suspended the foreclosure proceedings pending verification of defendants' financial status.

¶ 9 On March 2, 2010, two months after the acceptance date of the TPP, Wildermuth transmitted additional documents to CitiMortgage by facsimile. Out of these documents, defendants did not complete line five of the tax transcript release form, a provision which was necessary to authorize the IRS to release tax information to CitiMortgage. Additionally, Acevedo identified his past and current residence as the property address, which did not match the address provided in his paycheck stubs and tax transcript release form.[8]

¶ 10 On May 12, 2010, after CitiMortgage requested defendants furnish the necessary supporting documentation, defendants continued to fail to submit an executed hardship affidavit, the most recent quarterly or year-to-date profit/loss statement for Acevedo, and fully executed tax transcript release forms for each defendant.

¶ 11 On August 17, 2010, CitiMortgage forwarded a letter to defendants at the property address indicating that they were ineligible for a permanent HAMP loan modification due to their deficient documentation. As a result, the TPP was terminated.

¶ 12 Thereafter, Wildermuth continued to submit documents on behalf of defendants in an attempt to obtain a permanent loan modification under HAMP. On August 30, 2010, Wildermuth faxed Acevedo's tax form, which was signed on May 12, 2010, and was incomplete, as it was missing the authorization to release his prior tax returns to CitiMortgage. On October 26, 2010, Wildermuth faxed two new tax forms from Acevedo and Bermudez, which were signed on September 27, 2010, but these documents still did not

---

[7]A form 4506-T is an Internal Revenue Services document which, if fully executed, allows a third party to obtain one's prior federal tax returns. A form 4506T-EZ is the short form of that document.

[8]To qualify for a permanent loan modification under HAMP, the borrower must occupy the property as their primary residence. HAMP Bulletin 2009-10 § C65.4 (Apr. 21, 2009).

include the third-party authorization. Wildermuth also submitted a letter from Acevedo's employer indicating his year-to-date commissions, which he earned as a real estate agent.

¶ 13                    The Sale of the Property and the Motion to Confirm Sale

¶ 14        On February 3, 2011, the property proceeded to judicial sale with CitiMortgage as the highest bidder. On April 11, 2011, CitiMortgage filed a motion to confirm sale and enter an order of possession, which was noticed for hearing on April 21, 2011.

¶ 15        On April 20, 2011, defendants, represented by the Law Offices of Al Holfeld, Jr., LLC, filed a motion for leave to file their appearance and an incorrectly captioned "motion for substitution of counsel."[9] Defendants also filed a combined motion to set aside the sale and objection to the confirmation of the sale pursuant to section 15-1508(d-5) of the Foreclosure Law (735 ILCS 5/15-1508(d-5) (West 2010)). Their motion asserted that the Law Offices of Al Holfeld, Jr., LLC, was retained on April 20, 2011, that defendants had applied for assistance under HAMP, and that the property proceeded to sale in material violation of HAMP. No affidavits or documents were attached in support of their motion. These motions were noticed for hearing on April 29, 2011.

¶ 16        On April 21, 2011, CitiMortgage presented its motion to confirm the sale to the circuit court, which entered a briefing schedule. The order indicated a response to CitiMortgage's motion had already been filed by defendants and CitiMortgage was permitted to file a reply by May 5, 2011. Hearing on the motion to confirm the sale was set for May 19, 2011. There was no indication in the order that defendants' counsel was present in court on April 21, 2011.

¶ 17              Defendants' Motion to Set Aside Sale and Memorandum in Support

¶ 18        On April 29, 2011, defendants presented their motion to set aside the sale and motion for substitution of counsel, the Law Offices of Al Holfeld, Jr., LLC. The circuit court allowed defendants to file a memorandum in support of their motion to set aside the sale and objection to the motion to confirm the sale on or before May 20, 2011. In turn, CitiMortgage's reply date was changed to June 17, 2011. The hearing date of May 19, 2011, was stricken and a new hearing date of June 28, 2011, was set. The circuit court also granted defendants' motion to substitute counsel *instanter*. Defendants, however, did not file their memorandum until June 20, 2011. On June 28, 2011, the circuit court set a new briefing schedule permitting CitiMortgage to file a reply by July 21, 2011, and set the matter for hearing on July 26, 2011.

¶ 19        Defendants' combined memorandum in support of their motion to set aside the sale and objection to the confirmation of the sale requested the circuit court exercise its "broad discretion" to set aside the sale pursuant to section 15-1508(d-5) of the Foreclosure Law (735

---

[9]No attorney had filed an appearance on behalf of defendants in the foreclosure litigation up until this point. From April 20, 2011, through the appeal, defendants have been represented by the Law Offices of Al Holfeld, Jr., LLC.

ILCS 5/15-1508(d-5) (West 2010)). Defendants asserted they were offered a TPP by CitiMortgage over the telephone in December 2009, after having provided their financial information. Defendants alleged they executed all relevant documents and made eight payments pursuant to the TPP. Defendants further alleged that because they submitted all their payments under the TPP, CitiMortgage "did not have the discretion to terminate defendants from the HAMP but were mandated to convert their TPP to a permanent modification." Defendants further asserted CitiMortgage did not request the missing documents from defendants prior to its termination of defendants from the HAMP program. Lastly, defendants contended CitiMortgage was required to suspend the judicial sale because defendants had previously submitted a timely request for HAMP consideration.

¶ 20    In support of their arguments, defendants attached as Exhibit A relevant portions of the United States Treasury Department's *Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages* (Handbook) and Supplemental Directives.[10]

¶ 21                                    *Acevedo's Affidavit*

¶ 22    In support of their memorandum, attached as Exhibit B, was the affidavit of Acevedo in which he averred that in October 2009 he retained Wildermuth to obtain a loan modification. In December 2009 Acevedo received the TPP offer. On January 12, 2010, and January 20, 2010, he and Bermudez executed the TPP agreement. He provided all the required documents to Wildermuth. Acevedo attested:

"In late May, we learned through Mr. Wildermuth that Citimortgage [*sic*] had said that the completed IRS Form 4056T-EZ [*sic*] had to be sent in. Mr. Wildermuth told me he had had [*sic*] done this." Then, on August 27, 2010, "Wildermuth called to tell us that Citi had told him there was a problem with our IRS Form 4056-T [*sic*]. On or about the same day, we received a letter in the mail to our home from Citimortage [*sic*] telling us that our application for a permanent modification had been denied due to insufficient information. I did not understand because we had submitted all documents that had been requested of us and had never been asked for documents that we did not provide."

Acevedo further attested "[w]e never received a request from Citimortgage [*sic*] to provide any of the documents they claimed were missing." Eight payments were automatically debited from his bank account under the TPP agreement. After he was denied a permanent loan modification, no more payments were debited from his account. Acevedo's affidavit did not make any reference to the exhibits attached to the memorandum, nor did it state the documents attached as exhibits were true and accurate copies.

---

[10]On appeal, the parties agree their citations to and reliance upon the Handbook and supplemental directives were inappropriate because those provisions do not apply to servicers of GSEs. The parties agree that the mortgage at issue is a Freddie Mac loan and therefore the correct directives are those issued by Freddie Mac in its Single-Family Seller/Servicer Guide (Guide) and in supplemental bulletins (Bulletins).

¶ 23                    *Documents Submitted by Defendants for Loan Modification*

¶ 24        In support of the memorandum, and attached as Exhibit C, were five separate group documents relating to defendants' loan modification. The first document was a four-page TPP letter dated December 14, 2009, addressed to defendants at the property address. The letter began, "**You may qualify for a Home Affordable Modification Trial Period Plan–a way to make your payment more affordable**." It continued, "We have enclosed a customized Home Affordable Modification Trial Period Plan ('Trial Period Plan'). If you qualify under the federal government's Home Affordable Modification Program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure." The letter also indicated "[y]ou may not qualify for this loan modification program."

¶ 25        To accept the offer, defendants were directed to "take the steps outlined on the enclosed document 'Complete Your Checklist' " by January 1, 2010. The documents listed in the checklist were:

> "1. Two copies of the enclosed Trial Period Plan signed by all borrowers
>
> 2. Your first month's trial period payment in the amount of <u>$1,120.63</u>
>
> 3. The enclosed Hardship Affidavit completed and signed by all borrowers
>
> 4. A signed and dated copy of IRS Form 4506-T (Request for Transcript of Tax Return) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-T signed and dated by both of the joint filers), and
>
> 5. Documentation to verify all of the income of each borrower (including any alimony or child support that you choose to rely upon to qualify). This documentation should include:
>
> For each borrower who is a salaried employee:
>
> Copy of the most recent filed federal tax return with all schedules; and Copy of the two most recent pay stubs.
>
> For each borrower who is self-employed:
>
> Copy of the most recent filed federal tax return with all schedules; and Copy of the most recent quarterly or year-to-date profit/loss statement."[11]

¶ 26        The third document included in Exhibit C was the five-page "Home Affordable Modification Trial Period Plan" signed by Acevedo on January 12, 2010, and Bermudez on January 20, 2010. Although the TPP agreement contained a signature line for CitiMortgage, it was not executed by CitiMortgage. The fourth document attached to Exhibit C was one page of a two-page hardship affidavit. The affidavit, however, was missing the page containing defendants' signatures.

¶ 27        The fifth document attached to Exhibit C was a one-page Form 4506T-EZ.[12] The form was required to be executed by both defendants separately, as they were not joint filers. The

---

[11]Only the documents relevant to this appeal are included in the text.

[12]Form 4506T-EZ is a substitute for Form 4506-T.

form, however, was signed by Acevedo and Bermudez, and included only Bermudez's social security number. The form was intended to allow CitiMortgage to obtain Bermudez's tax returns from 2007 and 2008.

¶ 28    A CitiMortgage Form 1126, entitled "Borrower Financial Information," was also attached to Exhibit C. This three-page document was executed by Bermudez and Acevedo and included their personal information, but lacked information regarding Acevedo's monthly income, or his assets. Further, defendants did not include an address in the form. Under "mailing address" it was written "same" and under "property address" it was written "same."

¶ 29                            *Wildermuth's Affidavit*

¶ 30    In support of the memorandum and attached as Exhibit D was the affidavit of Wildermuth. He averred defendants retained him on October 7, 2009, to assist them in obtaining a permanent loan modification under HAMP. He stated "CitiMortgage offered defendants a HAMP TPP via telephone but did not immediately transmit the TPP documents." He further averred defendants submitted their first payment on January 9, 2010, and that the rest of the TPP payments were tendered on a timely basis. He stated, "On or about January 22, 2010, our office transmitted to Citi via facsimile and overnight mail both the TPP agreement executed by the defendants and a complete application package for a permanent modification."

¶ 31    In paragraphs three, four, and five, Wildermuth attested his office called CitiMortgage on May 20, 2010, to inquire about the status of the permanent modification and was informed by a CitiMortgage employee "that there was a problem with defendants' IRS Form [4506T-EZ] and asked us to submit another one." On May 25, 2010, Wildermuth's office resubmitted defendants' Form 4506T-EZ by facsimile.[13] Wildermuth averred that "approximately three more months passed with no definitive word from CitiMortgage concerning the status of defendants' TPP. On or about August 27, 2010, my paralegal phoned CitiMortgage to inquire again about the status of defendants' TPP. This time 'Rick' informed us there was a problem with defendants' IRS Form [4506-T]." Wildermuth continued, "[o]n or about August 30, 2010, we submitted a corrected Form [4506-T] to CitiMortgage by facsimile."

¶ 32    Wildermuth further attested he telephoned CitiMortgage on September 7, 2010, and was informed by a CitiMortgage employee that the bank had closed defendants' file in early August because it was missing an updated profit and loss statement and Form 4506-T. Wildermuth asserted "[m]y office had not previously been informed of any allegedly 'missing' P&L statement." On October 26, 2010, after gathering the information for the profit and loss statement and corrected Form 4506-T, Wildermuth submitted the documents by facsimile and requested CitiMortgage reopen defendants' file.

---

[13]We note that throughout the affidavit Wildermuth consistently refers to form 4506T-EZ by the wrong form number. We have changed the form numbers to reflect the correct form throughout his affidavit for ease of reading. Moreover, we again note that Form 4506T-EZ is an acceptable substitute for Form 4506-T as stated in CitiMortgage's loan modification materials.

¶ 33    In paragraph seven of his affidavit, Wildermuth stated that on November 23, 2010, one of his paralegals called CitiMortgage and was informed by one of its employees that the file had not been reviewed since August 2010. On January 7, 2011, his law office called CitiMortgage to inquire about the status of defendants' loan modification and was informed the foreclosure proceedings had resumed and the judicial sale was scheduled for February 3, 2011. Wildermuth attested the CitiMortgage employee instructed him to submit a new HAMP application package. On January 13, 2011, Wildermuth "submitted a complete new HAMP application to CitiMortgage on defendants' behalf." On January 31, 2011, Wildermuth was informed by CitiMortgage "that it had terminated its review of defendants' file for a permanent modification and that it would not postpone the sale of defendants' home set for February 3, 2011." Wildermuth did not attest to the veracity of any of the five documents included in the group exhibit attached to defendants' memorandum in support.

¶ 34                    CitiMortgage's Reply to the Motion to Confirm the Sale and
                        Response to the Motion to Set Aside the Sale

¶ 35    Although the hearing on the motion to confirm the sale was scheduled for June 26, 2011, it did not occur on that date. The trial court allowed CitiMortgage until July 21, 2011, to file its reply and hearing was scheduled for July 26, 2011.

¶ 36    On July 21, 2011, CitiMortgage filed an agreed motion for extension of time to file its reply. CitiMortgage explained it needed more time due to the fact defendants had filed litigation in federal district court regarding the same mortgage and note.

¶ 37    On July 26, 2011, the hearing on the motion to confirm the judicial sale was entered and continued to August 30, 2011, for status. On August 30, 2011, Dykema Gossett PLLC was granted leave to filed an additional appearance on behalf of CitiMortgage and was permitted until October 28, 2011, to file a reply to the motion to confirm the sale. The motion was entered and continued to October 28, 2011, for status. On October 28, 2011, a briefing schedule was set, granting CitiMortgage until November 2, 2011, to file its reply and its motion to strike the affidavit of Wildermuth. Defendant was given until November 30, 2011, to respond to the motion to strike. Hearing on the motion to confirm the judicial sale and the motion to strike was set for January 5, 2012.

¶ 38    On November 2, 2011, CitiMortgage filed its reply to the motion to confirm the sale. CitiMortgage asserted defendants failed to present evidence establishing they were eligible for a HAMP modification, including the signature page of the hardship affidavit, the most recent profit and loss statement for Acevedo, or separate IRS tax Form 4506-T for each of the defendants. CitiMortgage pointed out that no documents were attached to either the Acevedo or Wildermuth affidavit. Additionally, CitiMortgage argued what Wildermuth attested was the profit and loss statement for Acevedo was actually a letter from a real estate company that stated Acevedo was self-employed and the amount of his commissions. CitiMortgage further argued the statements contained in Wildermuth's affidavit were not based on his personal knowledge, were based on inadmissible hearsay, and did not attach any business records. CitiMortgage also disagreed with defendants, stating the January 13, 2011,

loan modification request did not seek a HAMP modification, as it did not use the prescribed forms for a HAMP loan modification request, nor did it include the required hardship affidavit. To support its arguments, Citimortgage referenced the supplemental directives relied upon by defendants.

¶ 39    CitiMortgage attached to its response an affidavit of Erin Theobald, a business operations analyst for CitiMortgage. She averred defendants failed to submit properly executed documentation. She further attested that attached to the affidavit were true and correct copies of: the August 17, 2010, notice of nonapproval for the TPP; a fax coversheet from Wildermuth's office dated August 30, 2010, which included Acevedo's IRS Form 4506-T dated May 12, 2010; and documents faxed by Wildermuth to CitiMortgage on October 26, 2010, which were comprised of Acevedo's IRS Form 4506-T, Bermudez's IRS Form 4506-T, and the letter from a realtor confirming Acevedo's status as a sales agent and his net earnings.

¶ 40                    Defendants' Motion for Extension of Time

¶ 41    Subsequently, defendants filed a motion for extension of time to file a reply in support of their motion to set aside the sale and to file a response to CitiMortgage's motion to strike the Wildermuth affidavit.[14] The motion for extension of time set forth that defendants' counsel's two-person law firm had approximately 15 briefs due in other matters between Thanksgiving and New Year and "was simply unable to complete them all on time." Defendants' counsel stated CitiMortgage's counsel "graciously agreed to an additional week for the filing of defendants' reply and response." Defendants also referenced the several continuances CitiMortgage received to file its briefs in the present case. No affidavit in support of the motion for extension of time was attached.

¶ 42    There were, however, copies of the proposed reply and response to the motion to strike Wildermuth's affidavit attached to the motion for an extension of time. For the first time in their reply, defendants specifically contended the property was sold in material violation of HAMP because no incomplete information notice was forwarded to defendants as required under HAMP guidelines and supplemental directive No. 10-01 prior to terminating the TPP. Defendants also submitted a "supplemental affidavit of Matthew Wildermuth" in which he averred on May 20, 2010, he telephoned CitiMortgage and was informed about Acevedo's incomplete IRS Form 4506-T. He further averred he submitted a second HAMP application to CitiMortgage on January 13, 2011.

¶ 43                    Hearing on the Motion to Set Aside Sale
                        and Motion to Confirm Sale

¶ 44    On January 5, 2012, the circuit court conducted the hearing on the motion to confirm the sale. After hearing oral arguments the circuit court denied defendants' motion for an

---

[14]The file stamps on the notice of motion and the motion are illegible. The record, however, reflects the motion was filed on January 3, 2012.

extension of time and struck defendants' reply in support of the motion to set aside the sale. The circuit court also struck paragraphs three, four, five, and seven of Wildermuth's affidavit. The circuit court further denied defendants' motion to set aside the sale of the property, granted CitiMortgage's motion confirming the judicial sale, and entered and continued the matter for presentment of a proposed order approving the sale. There is no record or transcript as to the circuit court's rationale.[15] On January 12, 2012, the court entered the order approving sale.

¶ 45                              Defendants' Motion to Reconsider

¶ 46    On February 14, 2012, defendants filed a motion to reconsider the denial of their motion for an extension of time, the confirmation of the sale, and the denial of the motion to set aside the sale pursuant to section 15-1508(d-5) of the Foreclosure Law based on the circuit court's misapplication of the law.[16] Defendants set forth the same assertions as in their stricken reply, that CitiMortgage sold their property in material violation of HAMP because CitiMortgage failed to forward written, incomplete-information notices to defendants before sending them the denial letter. Defendants again relied upon the Handbook and Supplemental Directives used for non-GSE mortgages.[17]

¶ 47    In response to the motion to reconsider, CitiMortgage asserted it provided defendants with verbal and written incomplete information notices and provided them an opportunity to cure application deficiencies both before and after the non-approval notice was sent. CitiMortgage attached to its response: (1) two written insufficient information notices, dated May 12, 2010, and May 26, 2010, sent to defendants at the property address requesting an executed hardship affidavit, completed tax transcript release forms, the most recent quarterly or year-to-date profit/loss statement for Acevedo; (2) a March 2, 2010, fax from Wildermuth to CitiMortgage in which Wildermuth transmitted the documents requested by CitiMortgage; and (3) a May 24, 2010, fax from Wildermuth to CitiMortgage transmitting tax transcript release forms for defendants.

¶ 48    In reply, defendants objected to CitiMortgage's submission of the insufficient-information notices as they were presented for the first time during briefing on the motion to reconsider. Defendants argued the notices were not newly discovered evidence because they

[15]The record does not include a memorandum order or bystander's report of proceedings on this date.

[16]The motion to reconsider was timely filed because the thirtieth day fell on a Saturday and Monday, February 13, 2012, was a court holiday. See 5 ILCS 70/1.11 (West 2012); 735 ILCS 5/2-1203 (West 2012).

[17]The motion to reconsider was noticed for March 1, 2012, however the record does not include an order from that date. It can be inferred from the record, however, that the trial court set a briefing schedule on the motion to reconsider.

were available in 2010, a year before hearing on the motion to set aside the sale. In addition, defendants argued the circuit court abused its discretion when it denied their motion for an extension of time to file their reply brief. Defendants asserted they demonstrated good cause for the extension, as they were working on 15 briefs during the time the reply brief was due on this matter and CitiMortgage was given "over 100 additional days" to file its response.

¶ 49    Thereafter, CitiMortgage filed a motion to correct a citation in its response to defendants' motion to reconsider.[18] CitiMortgage requested the court allow it to reference the relevant portions of the correct version of the HAMP Guide and Bulletins which applied to GSEs. The circuit court granted defendants 14 days, or until May 18, 2012, to supplement their motion in light of CitiMortgage's citations. On May 22, 2012, two days before the hearing was scheduled on the motion to reconsider, defendants filed a motion for an extension of time to file supplemental citations in support of their motion to reconsider and a motion for leave to issue limited discovery. Defendants asserted their prior citations to non-GSE directives were mostly correct due to Freddie Mac's adoption of the United States Treasury's supplemental directives, but that they needed more time to locate the July 28, 2010, version of the Guide.

¶ 50    On May 24, 2012, after hearing oral arguments on defendants' motion to reconsider, the circuit court granted CitiMortgage's motion to cite the correct version of the HAMP Guide and Bulletins and denied defendants' motion for an extension of time to file supplemental citations and for leave to issue limited discovery. The circuit court took the motion to reconsider under advisement.[19] On August 31, 2012, the circuit court issued an order stating:

> "This matter comes before the Court on the motion of Juanita Bermudez and Hector Acevedo to reconsider this Court's January 12, 2012, Order Approving Report of Sale and Distribution, Confirming Sale and Order of Possession, it is ordered: The motion is denied."[20]

On September 28, 2012, defendants timely filed their notice of appeal.

¶ 51                                    ANALYSIS

¶ 52    Defendants' two main contentions on appeal are that the circuit court erred in: (1) approving the judicial sale of the property; and (2) denying their motion for an extension of time to file their reply brief to the motion to set aside the sale and file a late response to the motion to strike the affidavit of Wildermuth, as well as a motion to obtain limited discovery. We address defendants' contentions in turn.

---

[18]The record on appeal does not contain a file-stamped copy of this motion. Orders subsequently entered by the circuit court indicate the motion was filed.

[19]The record does not contain a record of proceedings or a bystander's report for this hearing.

[20]No record of proceedings or bystander's report exists for this court date.

¶ 53                           Order Approving and Confirming Sale
                                and Distribution of the Property

¶ 54        On appeal, defendants contend the circuit court erred in approving the judicial sale of the
property because: (1) they applied for assistance under HAMP; and (2) their property was
sold in material violation of HAMP. Defendants assert that the language of section
15-1508(d-5) of the Foreclosure Law indicates that it is "more likely than not" that they
applied for HAMP. Defendants conclude the sale must be vacated as they have complied
with section 15-1508(d-5) of the Foreclosure Law. 735 ILCS 5/15-1508(d-5) (West 2012).
Defendants maintain that because their argument involves issues of law, the standard of
review is *de novo*.

¶ 55        In response, CitiMortgage asserts defendants failed to submit a complete HAMP
application, including all required documentation, and, therefore, defendants did not apply
for assistance under HAMP as required under section 15-1508(d-5)(i) of the Foreclosure
Law. 735 ILCS 5/15-1508(d-5)(i) (West 2010). CitiMortgage contends the standard of
review for the approval of a judicial sale is an abuse of discretion.

¶ 56                                  *Standard of Review*

¶ 57        At issue on appeal is whether the circuit court properly confirmed the judicial sale of the
property. The standard of review of a circuit court's approval of a judicial sale is an abuse of
discretion. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008); *Fleet Mortgage Corp.
v. Deale*, 287 Ill. App. 3d 385, 388 (1997). A circuit court abuses its discretion when its
ruling rests on an error of law or where no reasonable person would take the view adopted by
the circuit court. *CitiMortgage, Inc. v. Johnson*, 2013 IL App (2d) 120719, ¶ 18; *Lakefront
Plumbing & Heating, Inc. v. Pappas*, 356 Ill. App. 3d 343, 350 (2005).

¶ 58                        *Section 15-1508(d-5) of the Foreclosure Law*

¶ 59        We now turn to address defendants' first contention that the circuit court erred in
confirming the judicial sale of the property. A judicial foreclosure sale is not complete until it
has been approved by the circuit court. *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill.
App. 3d 923, 927 (1997). Typically, section 15-1508(b) of the Foreclosure Law (735 ILCS
5/15-1508(b) (West 2012)) governs the circuit court's analysis in approving or disapproving
a sale and is the only means under which a defendant can move to set aside a sale. *Mortgage
Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 4-5 (2010).[21] Section
15-1508(d-5) of the Foreclosure Law, however, provides:

---

[21]Section 15-1508(b) provides, in relevant part, as follows:

"Upon motion and notice in accordance with court rules applicable to motions generally,
which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the
sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of
Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was
conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an
order confirming the sale." 735 ILCS 5/15-1508(b) (West 2012).

"The court that entered the judgment shall set aside a sale held pursuant to Section 15-1507, upon motion of the mortgagor at any time prior to the confirmation of the sale, if the mortgagor proves by a preponderance of the evidence that (i) the mortgagor has applied for assistance under the Making Home Affordable Program established by the United States Department of the Treasury pursuant to the Emergency Economic Stabilization Act of 2008, as amended by the American Recovery and Reinvestment Act of 2009, and (ii) the mortgaged real estate was sold in material violation of the program's requirements for proceeding to a judicial sale." 735 ILCS 5/15-1508(d-5) (West 2012).

Similarly to section 15-1508(b), this section uses the word "shall." The Foreclosure Law expressly provides that when "shall" is used, it means that something is mandatory and not permissive. 735 ILCS 5/15-1105(b) (West 2012); *Lewis*, 229 Ill. 2d at 178 (holding the trial court must approve the judicial sale unless it finds that any of the four specified exceptions in section 15-1508(b) are present). Although defendants do not argue that one of the four exceptions to approving the sale pursuant to section 15-1508(b) is present in this case, they do, however, argue that the circuit court erroneously approved the sale in violation of section 15-1508(d-5) because they had applied for assistance under HAMP prior to the sale. 735 ILCS 5/15-1508(d-5) (West 2012). As section 15-1508(d-5) contains the same mandatory language as section 15-1508(b), it thereby provides an alternate vehicle under which a court must set aside a judicial sale if all statutory requirements are met. See *Johnson*, 2013 IL App (2d) 120719, ¶ 33 ("In order to set a sale aside, section 15-1508(d-5) requires that a defendant file a motion before confirmation of the sale and prove, by a preponderance of the evidence, that the defendant applied for assistance under the MHA [(MHAP)] and that the sale took place in *material violation* of the MHA's [(MHAP's)] requirements, *i.e.*, the HAMP guidelines, for proceeding to a judicial sale." (Emphasis in original.)). Thus, under the terms of section 15-1508(d-5), defendants must prove by a preponderance of the evidence that they applied for assistance under HAMP *and* that the real estate was sold in material violation of HAMP's requirements for proceeding to judicial sale.

¶ 60 Defendants contend that the circuit court erroneously approved the judicial sale of their property because they proved by a preponderance of the evidence that they applied for assistance under MHAP through the Freddie Mac HAMP and the property was sold in material violation of HAMP. The threshold issue, however, is whether defendants "applied for assistance" under HAMP, because without having first applied for assistance under HAMP, their property could not be sold in material violation of HAMP. Moreover, without applying for assistance under HAMP, one cannot obtain the relief sought under section 15-1508(d-5), vacating the judicial sale.

¶ 61 In order to determine whether defendants "applied for assistance" we first turn to the language of section 15-1508(d-5). Initially, we note that this section was adopted by our legislature on July 23, 2010. As this provision is relatively new, little authoritative case law

exists interpreting the statute.[22] When construing a statute, we must "give effect to the intent of the legislature." *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 37. When the statutory language is clear and unambiguous, we apply its plain and ordinary meaning without looking to outside sources for aid. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). This is because the plain language of a statute is the most reliable indicator of the legislature's intent. *Id.* To determine the plain meaning of statutory terms, we consider the statute itself, the subject it addresses, and the intent of the legislature in enacting it. *Id.*

¶ 62    Defendants do not assert they submitted a complete application, but instead contend they satisfied section 15-1508(d-5) because the intent of the law does not support an interpretation requiring borrowers to have submitted a complete application in order to have "applied for assistance." They allege to have met their burden by demonstrating it is "more likely than not" they applied for assistance by making TPP payments, submitting a signed TPP agreement, and demonstrating an effort to submit the required documentation.

¶ 63    In order to determine whether defendants "applied for assistance under the Making Home Affordable Program" in accordance with section 15-1508(d-5), we begin by looking to the plain and ordinary meaning of "applied." See *Blum*, 235 Ill. 2d at 29. The Foreclosure Law does not define the phrase "applied for assistance" for purposes of section 15-1508(d-5). It is therefore appropriate for us to consult a dictionary to determine its plain meaning. See *Relf v. Shatayeva*, 2013 IL 114925, ¶ 32 (consulting a dictionary to determine the plain meaning of "personal representative" as it was not defined in the Code of Civil Procedure). To "apply" means "[t]o make a formal request or motion." Black's Law Dictionary 116 (9th ed. 2009). A prior edition of Black's Law Dictionary defined "apply" as follows: "[t]o make a formal request or petition, usually in writing, to a *** company, for the granting of some favor, or of some rule or order, which is within his or their power or discretion." Black's Law Dictionary 91 (5th ed. 1979). Another definition is, "to make an appeal or a request esp. formally and often in writing and usu. for something of benefit to oneself." Webster's Third New International Dictionary 105 (1993). The word "assistance" is synonymous with the verbs "to help" and "to aid." *Id.* at 132.

¶ 64    In addition, our statute sets forth that the application must be initiated "under the Making Home Affordable Program established by the United States Department of the Treasury pursuant to the Emergency Economic Stabilization Act of 2008, as amended by the American Recovery and Reinvestment Act of 2009." 735 ILCS 5/15-1508(d-5) (West 2012). HAMP is a component of the Making Home Affordable Program. See 12 U.S.C. § 5219a (2012) (consistently referring to HAMP as "the Home Affordable Modification Program of the Making Home Affordable initiative of the Secretary of the Treasury"). HAMP allows the

---

[22]In the only published case concerning this subsection, *CitiMortgage, Inc. v. Johnson*, 2013 IL App (2d) 120719, this court considered the "material violation" element, accepting as given that the borrowers in that case had applied for assistance. *Id.* ¶ 23. Similarly, in the leading Seventh Circuit case regarding HAMP TPPs issued before the June 1, 2010, revisions, the court assumed the borrower complied with all of her obligations under the TPP agreement. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 558 (7th Cir. 2012).

- 15 -

Treasury to work with loan service providers (servicers) to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures." 12 U.S.C. § 5219(a)(1) (2012). Construing the language of the statute according to its plain meaning, "applied for assistance under MHAP" means to formally apply, usually in writing, for help pursuant to the procedures set forth by HAMP, a component of MHAP.

¶ 65    Because our legislature specifically references MHAP, we must consider the regulations governing the program to determine whether defendants applied for assistance. The HAMP procedures have been amended multiple times since the program's inception. Therefore, we must look to the version of the Guide relevant to defendants to assess what is required to apply for assistance under HAMP. Both parties agree that the mortgage is owned by Freddie Mac and, therefore, the GSE Guide and Bulletins govern the process of obtaining a loan modification. In the present case, defendants were offered a stated income TPP via letter from CitiMortgage on December 14, 2009. The TPP agreement stated the modification effective date was January 1, 2010, and indicated if all documents were not provided by this date, the TPP would terminate. Therefore, the Guide in effect when the TPP letter was sent on December 14, 2009, along with any Bulletins published up to that date are applicable to this case.[23]

¶ 66    The applicable HAMP Guide and Bulletins do not set forth procedures to "apply" for assistance. In fact, the HAMP Guide and Bulletins do not refer to "applying for assistance" at all. Instead, the Guide and Bulletins set forth the procedures required to issue a TPP offer (the first step in the loan modification process), specifically that borrowers must be "eligible" and their income "verified." In order to determine eligibility and income, the borrower must submit documentation to the servicer, which includes:

> "• Two original executed Trial Period Plan documents
>
> • First payment due under the Trial Period terms
>
> • Documentation to verify occupancy (See Section C65.4 (a))
>
> • Income documentation (See Section C65.6(b))
>
> • Signed Form 4506-T, Request for Transcript of Tax Return
>
> • Fully executed Hardship Affidavit
>
> • Completed and signed page two of Form 1126, Borrower Financial Information, if the Borrower is current or less than 31 days delinquent
>
> • Executed disclosures, if any, to the extent applicable federal, State or local law requires executed disclosures to be retained by the provider." HAMP Bulletin 2009-10 § C65.5 (Apr. 21, 2009).

The documentation required to verify occupancy includes, "the Borrower's most recent signed federal income tax return (or transcript ***), a credit report and one other form of documentation that would supply reasonable evidence that the property is the Borrower's

---

[23]The first Guide that included regulations regarding HAMP was published on March 4, 2009. Home Affordable Modification Program Guidelines (Mar. 4, 2009). Bulletins are issued periodically by Freddie Mac and are used to indicate explicitly what changes have occurred to the Guide.

Primary Residence." *Id.* C65.4. To verify each borrower's income the following documentation must be obtained by the servicer:

- Most recent federal tax return or previous year's W-2 for salaried borrowers
- A signed Form 4506-T for each borrower
- The two most recent pay stubs for each wage earner that reflects at least 30 days of year-to-date earnings
- For self-employed borrowers, the most recent signed and dated quarterly or year-to-date profit and loss statement and other reliable third-party documentation the borrower voluntarily provides
- For borrowers with other income such as social security: letters, exhibits, a disability policy or benefits statement from the provider that states the amount, frequency, and duration of the benefit. Additionally, the borrower must provide copies of signed federal income tax returns, IRS W-2 forms or copies of the two most recent bank statements.

See *id.* C65.6(b). Therefore, we conclude, in order to "apply for assistance under MHAP" pursuant to section 15-1508(d-5) of the Foreclosure Law the borrower must submit the documentation required by the servicer to determine the borrower's eligibility and verify his or her income.

¶ 67    In the present case, defendants' stated income TPP was based on prior, unverified financial information provided by defendants over the telephone. Stated income TPPs have a different set of requirements and procedures than verified TPPs. Accordingly, defendants' application requirements were different from those who had already verified their information. The record discloses defendants did not submit the required documentation to CitiMortgage. Specifically, the record demonstrates defendants failed to prove by a preponderance of the evidence they submitted an executed hardship affidavit, the most recent quarterly or year-to-date profit/loss statement for Acevedo, a self-employed borrower, or separate, tax transcript request forms from each defendant.[24] Section C65.5 of the HAMP Bulletin listed those documents as the paperwork a borrower must submit in order to apply for modification. HAMP Bulletin 2009-10 § C65.5 (Apr. 21, 2009).

¶ 68    Notably, defendants did not initially attach the documents they submitted to CitiMortgage to their motion to set aside the sale. Thereafter, when the circuit court granted them leave to file a memorandum in support of their motion, the documents were attached, but they were not sworn copies. See *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 348-49 (2010) ("To properly authenticate a document, a party must present evidence which demonstrates that the document is what the party claims it to be."). Defendants had two opportunities to attest to the veracity of the documents, first in Acevedo's affidavit and

---

[24]The lack of a complete Tax Transcript Request Form is particularly important for determining the eligibility of the borrowers for HAMP in the first instance. To participate in HAMP a borrower must reside in the property as his or her primary residence. The servicer then obtains the borrower's tax returns to verify their primary residence is the property for which they are seeking to obtain a loan modification.

then in Wildermuth's affidavit. Neither affidavit contained the statement that the documents attached were true and correct copies of what was submitted. See *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 415 (2005) (the proponent establishes the identity of the document "through the testimony of a witness who has sufficient personal knowledge to satisfy the trial court that a particular item is, in fact, what its proponent claims it to be"). Moreover, Wildermuth's affidavit contained conclusory statements such as "our office transmitted to Citi via facsimile and overnight mail both the TPP agreement executed by the defendants and *a complete application package* for a permanent modification." (Emphasis added.) See *Marquette National Bank v. B.J. Dodge Fiat, Inc.*, 131 Ill. App. 3d 356, 362 (1985).

¶ 69    Furthermore, no record of proceedings or bystander's report was provided on appeal. It is the duty of the appellant to present this court with a sufficiently complete record of the trial court proceedings to support his claims of error. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003). "An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). Therefore, when the issue on appeal relates to the conduct of a hearing or proceeding, the absence of a transcript or other record of that proceeding means this court must presume the order entered by the circuit court was in conformity with the law and had a sufficient factual basis. *Rogers*, 204 Ill. 2d at 319. Pursuant to section 15-1508(d-5), defendants must prove by a preponderance of the evidence they applied for assistance under HAMP. Based on this record, we cannot say the trial court abused its discretion in denying defendants' motion and confirming the sale of the property.

¶ 70                      *Sold in Material Violation of MHAP*

¶ 71    Defendants further assert on appeal that the property was sold in material violation of MHAP and therefore the judicial sale must be set aside pursuant to section 15-1508(d-5) of the Foreclosure Law. 735 ILCS 5/15-1508(d-5) (West 2012). Defendants assert when a borrower receives a stated income TPP and provides a payment prior to May 1, 2010, and fails to provide documentation, the servicer cannot determine them ineligible for HAMP unless the servicer complied with the notice requirements of section C65.18(e) of the Guide. Defendants maintain it is only after this proper determination that the servicer could conduct a foreclosure sale. Defendants contend they never received the incomplete information notices and that the notices provided by CitiMortgage in their response to the motion to reconsider did not comply with HAMP's notice requirements.

¶ 72    CitiMortgage contends defendants waived this argument on appeal, as these issues were first raised in their stricken reply to the motion to set aside sale. We agree. The record discloses defendants did not assert that the property was sold in material violation of HAMP's requirement to send incomplete-information notices under C65.18(e) of the Guide in their motion to set aside the sale or their memorandum in support of the motion. Because defendants did not raise this issue properly before the trial court it is waived on appeal. See *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864,

874 (2003). Moreover, we need not reach a determination on this issue, as defendants failed to meet the threshold requirement of proving by a preponderance of the evidence they applied for assistance under MHAP.

¶ 73 Orders Denying Defendants' Motion for an Extension of Time and
Motion for Leave to Obtain Limited Discovery

¶ 74 *Motion for an Extension of Time to File Late Reply and Late Response to the*
*Motion to Strike Affidavit*

¶ 75 Lastly, defendants contend the circuit court erred in denying defendants' motion for extension of time to file their reply brief and response to the motion to strike Wildermuth's affidavit, as well as a separate motion to conduct limited discovery. Defendants' argue they established good cause for the extensions, as defendants' counsel's firm employed two attorneys, who had approximately 15 briefs due during the same time period as its reply was due.

¶ 76 Illinois Supreme Court Rule 183 states, "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. S. Ct. R. 183 (eff. Feb. 16, 2011). Good cause is fact-dependent and rests within the sound discretion of the circuit court. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). It is well established that absent an abuse of discretion, an appellate court will not disturb a circuit court's denial of a motion for an extension of time. *Id.* at 354.

¶ 77 We commend defendants' counsel's forthright statement that the law firm was "simply unable to complete [the 15 briefs] all on time." The motion for extension, however, was filed over a month after the reply brief was due and was unsupported by affidavit. Moreover, it was filed two days before the January 5, 2012, hearing on the motion to confirm the sale, which had been pending since April.

¶ 78 Additionally, defendants' motion for extension of time indicated that no prejudice would result from the delay, which is *not* the applicable standard for a motion for extension of time. Rule 183 requires the movant to show good cause. Ill. S. Ct. R. 183 (eff. Feb. 16, 2011). Requiring a showing of lack of prejudice in a motion for extension of time "would be tantamount to saying that litigants are free to disregard our rules so long as the opposing side cannot show harm." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). For these reasons, we cannot say the trial court abused its discretion in denying defendants' motion for extension of time.

¶ 79 *Motion for Leave to Obtain Limited Discovery*

¶ 80 On appeal defendants also briefly assert the circuit court improperly denied their motion for leave to conduct discovery to obtain the applicable Guide. Plaintiff asserts defendants had available to them the correct version of the Guide, as CitiMortgage had attached the applicable version of the Guide to its motion to correct citation. Additionally, plaintiff asserts

the specific subchapter defendants sought was published in Bulletin 2010-17 and was available to defendants.

¶ 81 Discovery rulings are within the trial court's discretion and will not be overturned absent an abuse of discretion. *Redelmann v. Claire-Sprayway, Inc.*, 375 Ill. App. 3d 912, 927 (2007). A trial court abuses its discretion only when "no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Foley v. Fletcher*, 361 Ill. App. 3d 39, 46 (2005). The circuit court did not explain its reasoning in a memorandum order. Additionally, no record of proceedings or bystander's report regarding this ruling was filed with this court. The record discloses, however, that the circuit court was apprised of the applicable version of the Guide and Bulletins through CitiMortgage's motion to correct citation. Accordingly, based on the record before us, we cannot say that the circuit court abused its discretion in denying defendants' request.

¶ 82                                              CONCLUSION
¶ 83 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 84 Affirmed.